# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)  Misc. No. _____<br>)<br>REAL PROPERTY 60 RIVERSIDE )<br>BOULEVARD, UNIT 3103, BLOCK 1171, )<br>BOROUGH OF MANHATTAN, )<br>NEW YORK, USA )<br>)<br>)<br>) |  |

## UNITED STATES' EX PARTE APPLICATION
## TO REGISTER AND ENFORCE A FOREIGN RESTRAINING ORDER
## PURSUANT TO 28 U.S.C. § 2467(d)(3) AND 18 U.S.C. § 983(j)

Applicant United States of America, by and through its undersigned attorneys, respectfully submits this application for a restraining order pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S.C. § 983(j). This application seeks enforcement of a foreign restraining order issued by the Supreme Court of Queensland, Australia, in order to preserve the availability of U.S. assets that are subject to forfeiture in Australia. The assets will be restrained pending the presentation of a final Australian confiscation (forfeiture) order to the United States' central authority for execution pursuant to the relevant bilateral treaty.

On February 28, 2020, the Department of Justice's Office of International Affairs referred a mutual legal assistance ("MLA") request from the Commonwealth of Australia to the Money Laundering and Asset Recovery Section ("MLARS") of the United States Department of Justice. The request seeks the enforcement of a restraining order (hereinafter, the "Australian Restraining Order") issued on February 21, 2020, by Justice Martin of the Supreme Court of

Queensland, against real property, bank accounts, and securities/investment assets of the Guptas in Australia, Singapore, and the United States. The real property jointly-owned by Amit Gupta and Sushila Gupta in the United States is 60 Riverside Boulevard, Unit 3103, Block 1171, Borough of Manhattan, New York. *See* Exhibit 1A, Certified Australian Restraining Order, p. 15. This property has been valued at approximately $3,675,000.

On March 13, 2020, the Australian Restraining Order was certified for enforcement by the Chief of the Money Laundering and Asset Recovery Section ("MLARS") in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii). *See* Exhibit 1, MLARS Chief Certification dated March 13, 2020. On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. DOJ Order No. 2820-2006. On October 18, 2018, the AAG further delegated all authority to enter restraining orders under §2467(d)(3)(A)(i) to the Chief of MLARS.

Should this Court issue the attached Proposed Order, this U.S. restraint will preserve the assets for confiscation pending the conclusion of criminal and confiscation proceedings in the Commonwealth of Australia.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II.  FACTUAL BACKGROUND

Australian authorities have advised the United States by MLA that they have been investigating the Australian company, Getax Pty Ltd. ("Getax"), its director, Amit Gupta, and

2

former directors (Govind Gupta (now deceased) and Ashok Gupta ("Guptas")) for various offenses including paying bribes to foreign public officials, money laundering, and fraud. Amit Gupta is a citizen of India and an Australian citizen. Ashok is an Indian citizen and a Singapore resident. Australian authorities have advised that the Guptas control assets in Australia, Singapore, and the United States that are subject to a February 21, 2020, restraining order issued by the Supreme Court of Queensland, Australia. In addition to controlling multiple assets in Australia and Singapore, target Amit Gupta is the co-owner of an apartment valued at $3.6 million, with his mother Sushila Gupta[1] (wife of Govind Gupta, now deceased), in New York. Amit Gupta inherited his interest when his father died in 2018 and is now also the executor of Govind Gupta's estate.

According to Australian authorities, Getax engages in the import and export of phosphates, coal, fruit, grains, and fertilizers, and also engages in shipping and cargo management. Amit Gupta serves as a Getax director, and his deceased father Govind Gupta and Ashok Guta formerly served as Getax directors. Getax controlled several subsidiaries located in Singapore, Hong Kong, and United Arab Emirates. Ashok Gupta is the director of a Singapore and a Hong Kong-based subsidiary of Getax. Australian authorities believe that a UAE subsidiary is controlled by the aforementioned targets; however, they have not yet received documents from UAE confirming this fact.

Australian authorities allege that beginning in or about 2007 and continuing through at least 2012, Govind, Amit and Ashok Gupta used Getax and its subsidiaries in Singapore, Hong Kong, and UAE to bribe public officials in the Republic of Nauru, an island country in

---

[1] Sushila is not alleged to have participated in the conspiracy.

Micronesia in the Central Pacific, to obtain various business advantages for Getax, including exclusive territorial distribution rights, extended contractual arrangements, and access to a minimum supply of phosphate. The Guptas are alleged to have wire transferred funds to the Australian bank accounts of and made cash payments and other payments for flights and accommodations on behalf of Nauru government officials, including parliament members, heads of state owned-businesses, and their relatives, as part of the bribery scheme. As part of their investigation, Australian authorities discovered that five different Getax subsidiaries were used by the Guptas to transfer approximately $2,775,000 into the Australian bank accounts of various Nauruan officials and their family members. For instance, Hi Tech Shipping and Logistics Services Ltd, a Hong Kong-based subsidiary of Getax, transferred over $996,000 to Nauru legislators, other government officials, and their friends, including parliamentarian Aloysius Amwano who is also the head of Nauru's phosphate corporation (RonPhos). Similarly, investigators recovered email exchanges between target Amit Gupta and David Adeang, a member of parliament, in which Adeang requested that Amit ask his father, Govind Gupta, to continue the "standard arrangement" in order to permit him to pay for his child's education and to secure his business interest in Nauru phosphate for the long term. Further, another suspected Getax subsidiary registered in the UAE, Pan Ventures, Ltd., believed to be controlled by the Guptas, deposited more than $1.7 million in bribe payments in the accounts of Nauru parliament members, other government officials, and their relatives.

## III. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal

Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)). Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. The statute's cross-references to § 983(j) do not require that criminal or civil forfeiture proceedings be filed in the United States to enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or his authorized designee that enforcement of

the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. Further, on October 18, 2018, the AAG further delegated all authority to certify restraining orders under §2467(d)(3)(A)(i) to the Chief of the Money Laundering and Asset Recovery Section ("MLARS"). The MLARS Chief's determination is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## IV.   DISCUSSION

### A.   The Australian Restraining Order Meets the Criteria for Enforcement Under § 2467(d)(3)(A).

Section 2467 sets forth the following criteria that are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement of the order are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *Id.*; and (5) whether there is any reason to believe the foreign order was obtained by fraud.[2] The Australian Restraining Order meets the above criteria for registration and enforcement pursuant to § 2467 and, therefore, entry of the Australian restraining order is both necessary and appropriate to preserve

---

[2] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process"). An affected party with a legally protected property interest may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

the property for eventual confiscation should be convicted.

1.   Agreement on Forfeiture Assistance

First, the United States and Australia are parties to a Mutual Legal Assistance Treaty that entered into force on April 30, 1997.[3] Under Article 17 of that Treaty, the United States is obligated to assist the Government of Australia in forfeiture matters, including the freezing and seizing of suspected criminal proceeds, such that the first criterion is satisfied.[2]

2.   Attorney General Certification

Second, the Australian Order was certified by the Chief of MLARS on February 21, 2020. *See* Exhibit 1. The Chief of MLARS, in certifying the order, acknowledged that she has considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from where the order came, and has concluded that enforcement of the foreign restraining orders, pursuant to 28 U.S.C. § 2467, is "in the interest of justice." *Id.* Thus, the second criterion for enforcement is met.

3.   Due Process

Third, the February 21, 2020, restraint order from the Commonwealth of Australia was issued consistent with due process. *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process." The Australian Federal Police ("AFP")

---

[3] *See* Treaty Between the Government of the United States of America and the Government of Australia on Mutual Legal Assistance in Criminal Matters, U.S.-Austl., April 30, 1997, S. Treaty Doc. No. 105-27 (1997).

obtained a restraining order prohibiting Amit Gupta and other targets from disposing or otherwise dealing with property identified for restraint. *See* Exhibit 1A at ¶ 5. The restraining order specifically names property in the United States. *Id.* The restraining order directs AFP to provide immediate notice of the restraining order and the documents supporting the application to all targets, including Amit Gupta. *See* Exhibit 1A at ¶ 25. Further, § 33 of the Proceeds of Crime Act of 2002 Act ("POCA") requires the responsible authority, in this case the AFP, to give written notice of a restraining order covering property that a person owns, to that person. *See* POCA at § 33. A copy of the application and any affidavit supporting the application must be included with the notice. *Id.* The AFP has provided written notice, a copy of the orders and supporting affidavits personally or by registered international mail to all persons subject to the February 21, 2020, order.

Under POCA, any person with an interest in restrained property can apply to have lawfully acquired property excluded from the restraining order under § 29 of the Act. *See* POCA at § 31. Further, the Act permits a person who did not receive notice of the order to seek revocation of the order. *See* POCA at § 42. The application seeking to revoke the order must be filed within 28 days of the notification of an order. *Id.* Also, under POCA, an order can be revoked if the court determines, "... (a) there are no grounds on which to make the order at the time of considering the application to revoke the order; or (b) it is otherwise in the interests of justice to do so." *See* POCA at § 42(5). To date, the AFP has not received any notice of applications made.

4. Subject Matter Jurisdiction

Fourth, the Australian authorities have represented that the Supreme Court of Queensland, Australia is the proper authority to issue the restraining order in this matter because

8

the POCA empowers the state and territory courts to enter such orders with respect to matters arising under the Act, and the Supreme Court of Queensland is a court with jurisdiction over the confiscation proceedings involving Amit Gupta and the other identified targets. *See* POCA at § 314. The Supreme Court of Queensland's jurisdiction has not been challenged by Amit Gupta and there is no reason to believe it is not the proper court. Taking into account the presumption of regularity of foreign judicial proceedings and these facts, the fourth criterion for enforcement is met. *See In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d at 42.

    5.    <u>Absence of Fraud</u>

Fifth, taking into account the presumption of regularity in foreign proceedings and the facts known to the United States, there is no reason to believe that the February 21, 2020, Australian Restraining Order was obtained by fraud on the part of Australian authorities. Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order are satisfied.

**B.    Dual Forfeitability Is Satisfied.**

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). In the published decisions of this Court, one judge *has* applied the requirement

9

without discussion, and another *declined* to resolve the question of whether dual forfeitability must be demonstrated by the United States at the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is required when enforcing a foreign restraining order and deciding that the United States satisfied the requirement), *with In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. May 17, 2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture . . . however, the Court need not resolve the question . . . because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the United States acknowledges that dual forfeitability may become relevant if and when the Commonwealth of Australia asks the United States to enforce a confiscation judgment and the United States applies to enforce such a final judgment.

Here, however, dual forfeitability is satisfied because Amit Gupta's underlying conduct would be chargeable under a variety of U.S. criminal laws giving rise to forfeiture had his conduct occurred here. Particularly, Amit Gupta and his co-conspirators' transfers of bribery payments, totaling approximately AUD 2.7 million, on several occasions to various accounts of foreign public officials in order to secure business advantages for their company Getax and its subsidiaries would constitute violations of the Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, et seq. ("FCPA"), which prohibits the bribery of foreign public officials. Both criminal and civil forfeiture are authorized for FCPA violations (bribery of a foreign public official).[4]

---

[4] *See* 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 (criminal forfeiture of any property which constitutes or is derived from proceeds of FCPA violations); 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes or is derived from violations of 15 U.S.C. §§78dd, et seq.).

The Guptas' and Getax's conduct would also constitute a money laundering offense under U.S. law for which forfeiture is also authorized. Australian authorities allege that the Guptas' conduct violates sections 400.3 and 11.2 of their criminal code, which prohibits "dealing with money or aiding, abetting, counseling, or procuring" the dealing of money valued at AUD 1 million that the person believes to be the proceeds of crime, or intends for the money to be used as an instrument of crime. *See* POCA at §§ 400.3 and 11.2. These offenses are ones for which forfeiture would be available under U.S. federal law.[5] Particularly, the repeated deposits to the Australian bank accounts of Nauruan public officials and their relatives to secure continued business advantages (e.g., contact extensions, exclusive access to Nauru's phosphate reserves and guaranteed minimum phosphate supply), would violate 18 U.S.C. § 1956(a)(1)(A)(i), which prohibits money laundering to promote a specified unlawful activity, here bribery of a foreign official. *See* 18 U.S.C. § 1956(c)(7)(B)(iv).

Further, the fact that this restraining order is for property which would be considered a substitute asset under U.S. forfeiture law does not bar enforcement of the order under § 2467. As noted above, the order restrains real property effectively controlled by one of the targets, Amit Gupta, and formerly controlled by Govind Gupta, which is effectively a substitute asset in the United States. The real property to be restrained is not considered by Australian authorities to be an asset directly traceable to the criminal offenses committed by the Guptas, rather it is

---

[5] See 18 U.S.C. § 982(a)(1) (criminal forfeiture of property available in money laundering offenses); see also 28 U.S.C. § 2461 (modes of recovery for offenses authorizing criminal forfeiture for any federal offense for which there is civil forfeiture authority); §1956(c)(7)(B)(iv) (defines bribery of a foreign public official as a money laundering SUA); 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of any property involved in a transaction in violation of the money laundering statutes).

considered to be property effectively controlled by Amit Gupta and thus subject to confiscation under Australian law.

Though no Circuit Courts now hold that § 853 contains authority to restrain substitute assets in criminal cases, no court has squarely considered the issue whether Congress intended to authorize this power in the context of § 2467. The issues raised recently in *Luis v. United States*, 136 S.Ct. 1083 (2016) involving pre-trial substitute asset restraint provisions of a health care fraud statute are not applicable here. The Court's concern in Luis dealt with 6th Amendment rights but foreign accused criminals do not have a 6th amendment right. Additionally, many, if not all, foreign confiscation regimes expressly permit a variation of a global restraint orders to pay for attorney's fees (and often their living and business expenses too).

The United States reads the language of the statute as providing for broader authority than § 853. Section 2467(d)(3)(A)(i) provides that "[t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law. . . .the government may apply for, and the court may issue, a restraining order at any time before or after initiation of forfeiture proceeding by a foreign nation." (emphasis added.) This is much broader than the language in § 853(e), which limits restraint to only those items directly forfeitable in 853(a) (the actual proceeds and instruments of crime). Additionally, § 2467(c)(3)(B) and (ii) provides that "[t]he court, in issuing a restraining order . . . may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General. . . ." The Department interprets that to mean § 2467 authorizes the U.S. to enforce those orders by their terms, and if a country can restrain substitute assets pre-trial, then Congress has given us the ability to do that for those countries. Finally, § 2467(d)(2) authorizes the execution of the order as a money judgment under Fed. R. Civ. Pro. Rule 69(a). As § 2467 is in

12

Title 28, the restraint and execution is more or less civil in nature and no U.S. criminal liability attaches. In civil cases, all of a persons' assets can be attached regardless of their connection to the tort or debt owned.

Section 2467(d)(3)(A)(i) provides that "[t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law. . . .the government may apply for, and the court may issue, a restraining order at any time before or after initiation of forfeiture proceeding by a foreign nation." (emphasis added.) Additionally, § 2467(c)(3)(B) and (ii) provides that "[t]he court, in issuing a restraining order . . . may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General. . . ." The Department interprets that to mean § 2467 authorizes the U.S. to enforce those orders by their terms, and if a country can restrain substitute assets pre-trial, then Congress has given us the ability to do that for those countries. Finally, § 2467(d)(2) authorizes the execution of the order as a money judgment under Fed. R. Civ. Pro. Rule 69(a). As § 2467 is in Title 28, the restraint and execution is more or less civil in nature and no U.S. criminal liability attaches. In civil cases, all of a persons' assets can be attached regardless of their connection to the tort or debt owned. Accordingly, the United States asserts that this Court has the authority to enforce an order restraining substitute assets in this matter.

  C. **This Court Should Act to Enforce the Australian Restraining Order by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).**

The February 21, 2020, Restraining Order entered by the Supreme Court of Queensland reflects the intention of the Australian prosecutor to seek a final confiscation judgment in forfeiture proceedings against Amit Gupta and his co-conspirators. Thus, the United States,

13

acting in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order against the suspect's U.S. assets.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the Australian Restraining Order—to "preserve the availability of property . . . subject to forfeiture" for the duration of the Australian criminal and confiscation proceedings. See 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign forfeiture proceedings). As such, this Court should recognize the Restraining Order from the Supreme Court of Queensland and enforce it by restraining the specified assets and prohibiting Amit Gupta, Sushila Gupta, and all others, from affecting the real property in the United States. See Exhibits 1 and 1A, MLARS Chief Certification and Australian Restraining Order, p. 15, ¶37 (ordering the restraint of real property in the United States). Should the Court grant this Ex Parte Application, the United States immediately will serve any resulting order on the affected individuals and will record *lis pendens* against the property set forth herein.

## V.    CONCLUSION

The United States respectfully requests that this Court enforce the attached Australian Restraining Order, consistent with U.S. obligations under the relevant treaty, by entering an order pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and 18 U.S.C. § 983(j)(1)(A). The United States will seek the assistance of the Australian Federal Police in providing notice and a copy of any order issued by this Court to Amit and Sushila

Gupta, once the assets are secured.

                                        Respectfully submitted,

                                        DEBORAH CONNOR, CHIEF
                                        MONEY LAUNDERING AND ASSET
                                        RECOVERY SECTION

By:    */s/ Mary Butler / Teresa Turner-Jones*
                                        Mary Butler
                                        Chief, International Unit
                                        Teresa C. Turner-Jones
                                        Senior Trial Attorney
                                        U.S. Department of Justice
                                        Criminal Division
                                        Money Laundering and Asset Recovery Section
                                        1400 New York Avenue NW, 10100
                                        Washington, DC  20530
                                        Telephone:    (202) 305-3215
                                        Email:  Teresa.Turner@usdoj.gov
                                        Attorneys for Applicant
                                        UNITED STATES OF AMERICA